Opinion by JUDGE BERNARD.
*48 ¶ 1 This appeal raises the question whether the offense of failing to register as a sex offender, contrary to section 18-3-412.5(1)(a), C.R.S.2012 ("[f]ailure to register pursuant to article 22 of title 16, C.R.S."), is a "catchall" that incorporates all of the registration duties that article 22 of title 16 imposes upon sex offenders. We answer the question "no" because, although subsection 412.5(1)(a) incorporates some of those duties, it does not incorporate them all. Rather, we conclude that (1) subsection 412.5(1)(a) refers to a discrete and statutorily defined set of acts based on duties that are described in article 22 of title 16; (2) subsections 412.5(1)(b) through (k) refer to different statutorily defined sets of acts based on other duties that are described in article 22 of title 16; and (3) the introductory language in subsection 412.5(1) is the catchall that covers acts based on duties that are described in article 22 of title 16 that are not otherwise covered by subsections 412.5(1)(a) through (k).
¶ 2 Here, defendant, Bryan Lloyd Halbert, appeals the jury's verdict finding him guilty of failing to register as a sex offender-second or subsequent offense, contrary to subsection 412.5(1)(a) and section 18-3-412.5(2), C.R.S.2012. He also appeals his sentence, which was enhanced because the trial court found that he had previously been convicted of four other felonies. As a result of our analysis, we conclude that there was insufficient evidence to support defendant's conviction under subsection 412.5(1)(a). Therefore, we vacate the conviction and sentence.
I. Background
¶ 3 In 1992, defendant was convicted of sexual assault on a child by a person in a position of trust. He was released from prison in 2003. Upon his release, the Sex Offender Registration Act, §§ 16-22-101 to - 115, C.R.S.2012, required that he register as a sex offender. However, before this case was filed in 2009, he had been previously convicted four separate times of the felony of failing to register as a sex offender.
¶ 4 In this case, the prosecution charged defendant with failing to register as a sex offender-second or subsequent offense-under subsection 412.5(1)(a) and section 18-3-412.5(2). The evidence at trial established that, in 2009, defendant stayed for a time with his brother in a house in Thornton, which is in Adams County. The house was owned by a relative. Defendant informed the proper Adams County authorities that he was residing in the relative's house. The relative later testified that defendant would often sleep on the couch.
¶ 5 The relative also testified that, no later than October 1, 2009, she kicked defendant out of her house. She stated that he did not return.
¶ 6 It was unclear exactly where he went. The relative testified that she dropped off his belongings at a barbershop in Lakewood, where he often stayed. Other evidence showed that he might have stayed at his sister's home in Parker. Although he listed his sister's address as an additional home address in a registration form for sex offenders, he checked the box marked "no" where a question on the form asked whether he "currently reside[d] at more than one address."
¶ 7 Defendant presented evidence that he continued to live at the house in Thornton without the relative's permission. Defendant's sister testified that her brother gave defendant permission to remain at the house even though the owner had kicked defendant out. She testified that the brother, who died before trial, allowed defendant to sleep in the garage or the back porch. Defendant's great-niece also testified that she occasionally visited defendant at the house in Thornton. She stated that defendant was "very comfortable" in the house, and that he would watch television with his shirt off.
¶ 8 The prosecution argued that defendant was required to change his registration form to show where he resided after his relative *49 kicked him out of the house in Thornton. Defendant argued that he continued to reside at that house, and therefore his registration form was accurate.
¶ 9 The jury convicted defendant of the charged offense, including a finding that he had previously been convicted of failing to register. As a result, the trial court enhanced defendant's conviction from a class 6 felony to a class 5 felony. The trial court found that defendant had been convicted of four habitual criminal counts based on defendant's four prior convictions for failing to register as a sex offender. The court sentenced him to twelve years in prison.
II. Sufficiency of the Evidence
A. Standard of Review
¶ 10 We review the sufficiency of the evidence supporting a jury's verdict de novo. Dempsey v. People, 117 P.3d 800, 807 (Colo.2005). We must determine "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt." People v. Sprouse, 983 P.2d 771, 777 (Colo. 1999).
¶ 11 In order to decide this case, we must also interpret statutes. The interpretation of statutes is an issue of law that we review de novo. People v. Poage, 272 P.3d 1113, 1116 (Colo. App. 2011). When we interpret statutes
our task is to determine and give effect to the legislature's intent by first examining the plain and ordinary meaning of the statutory language. We must read the words of a statute in context, and analyze the whole statute in order to provide consistent, harmonious, and logical effect to all its parts. We may not adopt a construction that renders any word superfluous. When the statutory language is clear and unambiguous, we apply the provision as written and do not engage in further statutory analysis.
Id. (citations omitted).
B. Analysis
¶ 12 The prosecution charged this offense solely under subsection 412.5(1)(a), which states:
A person who is required to register pursuant to article 22 of title 16, C.R.S., and who fails to comply with any of the requirements placed on registrants by said article, including but not limited to committing any of the acts specified in this subsection (1), commits the offense of failure to register as a sex offender:
(a) Failure to register pursuant to article 22 of title 16, C.R.S.
¶ 13 The prosecution's theory at trial was that defendant violated this subsection because, after the relative kicked him out of the Thornton house, he did not modify his registration in Adams County to change his address or he did not file an appropriate form canceling his Adams County registration.
¶ 14 Defendant argues that the prosecution did not provide sufficient evidence to the jury to prove that he failed to satisfy the registration duties that fall under subsection 412.5(1)(a). He asserts that the pertinent registration duties are found in section 16-22-108(1), C.R.S.2012.
¶ 15 The prosecution responds that subsection 412.5(1)(a) is a "catchall" because it refers broadly to the entirety of "article 22 of title 16." As a result, the prosecution's argument continues, subsection 412.5(1)(a) encompasses any violation of any of the registration duties found in article 22 of title 16. Therefore, defendant violated subsection 412.5(1)(a) if he failed to register with law enforcement (1) when he changed his address or established an additional address, see § 16-22-108(3)(a), C.R.S.2012; or (2) when he did not file a cancellation form when he was kicked out of the Thornton house, see § 16-22-108(4)(a), C.R.S.2012.
¶ 16 Defendant counters that subsection 412.5(1)(a) is not a catchall. Rather, he submits, it is specifically linked and limited to the registration duties found in section 16-22-108(1). Many, but not all, of the other registration duties, which are found article 22 of title 16, are expressly incorporated in the crimes defined in subsections 412.5(1)(b) through (k).
*50 ¶ 17 We generally agree with defendant for the following reasons.
¶ 18 First, the plain language of subsection 412.5(1) makes clear that each of its subsections establishes a crime.
A person ... who fails to comply with ... the requirements [of article 22 of title 16], including ... [by] committing any of the acts specified in this subsection (1), commits the offense of failing to register as a sex offender....
(Emphasis supplied.) Our conclusion is supported by the division's analysis in Poage, a case that also analyzed the subsections of subsection 412.5(1), and which held that the subsections created and defined crimes. The division rejected the prosecution's argument, which is similar to the prosecution's argument here, that "subsections (a) through (k) of section 18-3-412.5(1) merely delineate acts that provide examples of a registrant's failure to register and do not create or define crimes." Poage, 272 P.3d at 1116.
¶ 19 Second, each of these subsections establishes a different crime. The prosecution contends that a charge under subsection 412.5(1)(a) is a catchall because, by referring to "article 22 of title 16," it necessarily includes all the conduct described in subsections 412.5(1)(b) through (k). We reject this argument. If all the conduct covered by those subsections is also covered by subsection 412.5 (1)(a), then those additional subsections are unnecessary. We cannot interpret a statute in a manner that "renders any word superfluous." Poage, 272 P.3d at 1116.
¶ 20 Third, the crimes established by the various subsections of subsection 412.5(1) correspond to duties imposed on sex offenders by article 22 of title 16. This correspondence is expressly established by subsection 412.5(1). It refers to "[a] person who is required to register pursuant to article 22 of title 16, C.R.S., and who fails to comply with any of the requirements placed on registrants by said article ." (Emphasis supplied.)
¶ 21 This correspondence is reinforced by section 16-22-103(6), C.R.S.2012. It states:
Any person who is required to register pursuant to this section and fails to do so or otherwise fails to comply with the provisions of this article may be subject to prosecution for the offense of failure to register as a sex offender, as described in section 18-3-412.5....
(Emphasis supplied.)
¶ 22 This correspondence is also found in each of the subsections of subsection 412.5(1) because subsection 412.5(1) specifically links each of its subsections with article 22 of title 16. Subsection 412.5 (1) states that any person who "fails to comply" with "any " of the duties imposed on sex offenders by article 22 of title 16, "including but not limited to committing any of the acts " listed in subsection (1), "commits the offense of failure to register as a sex offender." (Emphasis supplied.)
¶ 23 Subsection 412.5(1)(a) is one of those listed acts. The act is "[f]ailure to register pursuant to article 22 of title 16, C.R.S." For the purposes of subsection 412.5(1)(a), the parameters of the verb "register" are outlined by statute. Section 16-22-102(5), C.R.S.2012, states that, for the purposes of article 22, title 16, " 'register' and 'registration' include initial registration pursuant to section 16-22-104, and registration, confirmation of registration, and reregistration, as required in section 16-22-108."
¶ 24 "Initial registration" is described in section 16-22-104(1)(b), C.R.S. 2012. It states that
[a]ny person who is sentenced prior to January 1, 2005, and who is required to register pursuant to section 16-22-103 shall initially register in the manner provided and within the times specified in section 16-22-108(1)(a) for registration.
¶ 25 Section 16-22-108 describes "registration," "confirmation of registration," and "reregistration." For example, as is pertinent here:
1. Section 16-22-108(1) imposes registration requirements.
a. Section 16-22-108(1)(a)(I), C.R.S.2012, generally describes who must register and where persons who are covered by the statute must register. It states in part: "Each person who is required to register ... shall register with the local law enforcement *51 agency in each jurisdiction in which the person resides."
b. Section 16-22-108(1)(a)(II), C.R.S.2012, establishes rules for when persons who are covered by the statute must register. It states in part: "Each person who is required to register ... shall initially register ... within five business days after release from incarceration ... or within five business days after receiving notice of the duty to register, if the person was not incarcerated."
c. Section 16-22-108(2), C.R.S.2012, provides additional rules concerning where persons covered by the statute must register by designating the office of the chief law enforcement officer of cities, towns, and city and counties for persons who reside in such places; and by designating the office of the county sheriff for persons who reside in unincorporated areas, or cities, towns, or cities and towns that have no chief law enforcement officer.
2. Section 16-22-108(1)(a)(II) also describes the process for "confirmation of registration." It states that, for persons sentenced on or after January 1, 2005, "[e]ach person ... shall ... confirm his or her initial registration within five business days after release from incarceration." Such confirmation is a product of a statutory requirement that persons sentenced on or after January 1, 2005, designate their residence in advance of being released from incarceration. See § 16-22-107, C.R.S. 2012.
3. Section 16-22-108(1)(b), C.R.S.2012, describes reregistration. It states that "each person ... shall reregister within five business days before or after the person's first birthday following initial registration" and "annually within five business days before or after the person's birthday thereafter. Such person shall reregister ... with the local law enforcement agency of each jurisdiction in which the person resides within five business days before or after his or her birthday...."
¶ 26 Thus, for the purposes of this case, defendant would have violated subsection 412.5(1)(a) if he did not initially register at all, as required by sections 16-22-104(1)(b) and 16-22-108(1)(a)(I) ; or if he did not originally register with the right law enforcement agency, as required by sections 16-22-108(1)(a)(I) and (2) ; or if he did not register within five days of being released from incarceration or within five days of being informed of his obligation to register, as required by section 16-22-108(1)(a)(II) ; or if he did not confirm his registration, as required by sections 16-22-107 and 16-22-108 (1)(a)(II) ; or if he did not reregister within five days before or after his birthday, as required by section 16-22-108(1)(b).
¶ 27 The evidence in this case did not establish that defendant failed to fulfill any of these duties. Instead, the evidence showed that he initially registered as required in Adams County. Although there was evidence that he was subsequently kicked out of the house in Thornton, and that he may have continued to live there surreptitiously, or that he may have lived in Parker or Lakewood, those acts did not fall within the ambit of subsection 412.5(1)(a).
¶ 28 When distilled, the prosecution's argument is that these acts do fall within the ambit of subsection 412.5(1)(a) because defendant failed to fulfill duties that are found in article 22 of title 16. Contrary to the prosecution's argument, however, the duties to which it points correspond to different subsections of subsection 412.5(1).
¶ 29 The prosecution contended that defendant did not change his registration to a new address after he was kicked out of the Thornton house, and he then went elsewhere to reside. Such conduct is made a crime by subsection 412.5(1)(g), which, as is relevant here, is defined as "[f]ailure to register with the local law enforcement agency in each jurisdiction in which the person resides upon changing an address." The duty that corresponds to this crime is found in section 16-22-108(3)(a), which states that
[a]ny person who is required to register ... shall be required to register within five *52 business days before or after each time the person:
(a) Changes such person's address, regardless of whether such person has moved to a new address within the jurisdiction of the law enforcement agency with which such person previously registered.
¶ 30 The prosecution also argued that defendant did not cancel his registration with Adams County after he was kicked out of the Thornton house, and he then began to reside in another county with his sister in Parker or at the barbershop in Lakewood. Such conduct is made a crime by subsection 412.5(1)(i), which, as is relevant here, is defined as "[f]ailure to complete a cancellation of registration form and file the form with the local law enforcement agency of the jurisdiction in which the person will no longer reside." The duty that corresponds to this crime is found in section 16-22-108(4)(a)(I), which states:
Any time a person who is required to register ... ceases to reside at an address, the person shall register with the local law enforcement agency for his or her new address and include the address at which the person will no longer reside and all addresses at which the person will reside. The person shall file the new registration form within five business days after ceasing to reside at an address. The local law enforcement agency that receives the new registration form shall inform the previous jurisdiction of the cancellation of that registration and shall electronically notify the [Colorado Bureau of Investigation] of the registration cancellation.
(Emphasis supplied.)
¶ 31 By comparing the three subsections at issue here-subsections 412.5(1)(a), (g), and (i)-we conclude that they address different conduct. In other words, the conduct that violates subsections 412.5(1)(g) and (i)-failing to register when changing addresses and failing to complete a cancellation form-is different from the conduct that violates subsection 412.5(1)(a)-failing to register initially, or to register in the right place, or to register within the necessary time limits, or to confirm a registration, or to reregister within five days of one's birthday.
¶ 32 Fourth, we disagree with the prosecution's contention that the division in Poage concluded, or at least suggested, that subsection 412.5(1)(a) is a catchall. In that case, the prosecution initially charged the defendant with having violated subsection 412.5(1)(a). The division observed that, "[b]ecause [subsection 412.5(1)(a) ] broadly references 'article 22 of title 16,' defense counsel filed a motion requesting the prosecution to elect the crimes allegedly committed to enable defendant to prepare a defense." Poage, 272 P.3d at 1115. The prosecutor elected to proceed under subsections 412.5(1)(g) and (i).
¶ 33 On appeal in Poage, the prosecution offered an argument similar to the one it makes here. It contended that " section 18-3-412.5(1) incorporates the entirety of title 16, article 22, and therefore, defendant's actions must be analyzed under" any applicable part of article 22 of title 16. Poage, 272 P.3d at 1116. The division rejected this argument because it "overlook [ed] [the prosecution's] election to proceed under section 18-3-412.5(1)(g) and (i)," and "[w]hen [the prosecution] elected so to proceed, [it] abandoned [its] arguments under section 18-3-412.5(1)(a)." Poage, 272 P.3d at 1116.
¶ 34 We do not read Poage in the way that the prosecution does. The division was not confronted with the issue whether subsection 412.5(1)(a) is a catchall, and, therefore, it was not called upon to engage in the type of analysis of subsection 412.5(1)(a) that we have engaged in here. Rather, the division focused on whether each subsection of section 18-3-412.5(1) established a different offense. Further, the division held that, by responding to the defendant's motion by electing to proceed under particular subsections, the prosecution had abandoned its argument that other sections applied. Moreover, the reference to the breadth of subsection 412.5 (1)(a), based on its reference to article 22 of title 16, was not a holding, but, instead, a description of the defendant's argument to the trial court.
¶ 35 Fifth, there is a catchall in subsection 412.5(1), but it is not found in subsection *53 412.5(1)(a). Rather, it appears in the initial text of the section. The legislature made clear that failing to comply with any of the requirements imposed on registrants by article 22 of title 16 is a criminal act, "including but not limited to committing any of the acts specified in this subsection (1)." (Emphasis supplied.) In other words, in addition to the list of acts described in subsections 412.5(1)(a) through (k), subsection 412.5(1) allows the prosecution to file charges against defendants who fail to comply with any other registration duties imposed on sex offenders by article 22 of title 16. See also § 16-22-103(6) ("Any person who ... fails to comply with the provisions of this article may be subject to prosecution for the offense of failure to register as a sex offender, as described in section 18-3-412.5, C.R.S."). The existence of the true catchall found in subsection 412.5(1) lends additional support to our conclusion that subsection 412.5(1)(a) is not designed to be a catchall, but, instead, to refer to a limited set of discrete acts.
¶ 36 Sixth, by interpreting subsection 412.5(1)(a) to have the discrete parameters that we have described above, we give full effect to the language of that subsection. By doing so in a manner that does not duplicate the parameters of subsections 412.5(1)(b) through (k), we give full effect to the language of those subsections. And by doing so in a manner that does not include the duties found in title 22 of article 16 that are not otherwise included in subsections 412.5(1)(a) through (k), we give full effect to the true catchall found in subsection 412.5(1). See Poage, 272 P.3d at 1116 ("We must read the words of a statute in context, and analyze the whole statute in order to provide consistent, harmonious, and logical effect to all its parts." (citation omitted)).
¶ 37 The prosecution elected to charge defendant only under subsection 412.5(1)(a). Based on the arguments it raises here, the prosecution could have charged him under other subsections, such as subsections 412.5(1)(g) and (i), or, if the conduct was not otherwise covered by subsections 412.5(1)(b) through (k), under the catchall of subsection 412.5(1), but it chose not to do so. And, as indicated above, we have concluded that the prosecution did not prove a violation of subsection 412.5(1)(a). This means that, taking the evidence presented as a whole and in the light most favorable to the prosecution, we conclude that no rational trier of fact would accept the existing evidence as sufficient to support a finding, beyond a reasonable doubt, that defendant was guilty of failing to register under subsection 412.5(1)(a). See Sprouse, 983 P.2d at 777. As a result, his conviction "cannot stand." Poage, 272 P.3d at 1118.
¶ 38 Based on this conclusion, we do not need to address defendant's other contentions.
¶ 39 The judgment of conviction and the sentence are vacated.
JUDGE DAILEY and JUDGE GABRIEL concur.